**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

DAVID LEE DERRICKSON,

        Plaintiff,

v.                                                        ACTION NO. 2:11cv508

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") that denied Plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act.

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference, dated November 18, 2011. This Court recommends that the decision of the Commissioner be VACATED and the case be REMANDED for further administrative proceedings.

## I. PROCEDURAL BACKGROUND

The plaintiff, David Lee Derrickson ("Plaintiff"), filed an application for DIB on April

29, 2008, alleging he had been disabled since February 7, 2008. R. 104-05.[1]  The application stemmed from his cardiomyopathy and congestive heart failure diagnoses. R. 104, 197. The Commissioner denied Plaintiff's application, both initially on June 13, 2008 (R. 57-61), and upon reconsideration on October 27, 2008 (R. 65-71).

At Plaintiff's request, a hearing before an Administrative Law Judge ("ALJ") took place on June 16, 2009, and an impartial vocational expert testified. R. 28-54. On August 17, 2009, the ALJ issued a decision again denying Plaintiff's claim. R. 16-27. On July 11, 2011, the Appeals Council denied Plaintiff's request to review the ALJ's decision, making the ALJ's decision the Commissioner's final decision. R. 6-10.

Having exhausted all administrative remedies, Plaintiff filed a complaint with this Court on September 12, 2011, in accordance with 42 U.S.C. § 405(g).  ECF No. 1. Defendant Commissioner filed an Answer to the Complaint on November 18, 2011. ECF No. 4. On November 22, 2011, an Order was entered directing the parties to file Motions for Summary Judgment. ECF No. 7. Plaintiff's Motion for Summary Judgment, or in the Alternative, Motion for Remand was submitted on December 19, 2011, (ECF Nos. 8 and 9), as was an accompanying Memorandum of Point and Authorities in Support ("Pl.'s Mem.," ECF No. 10). Defendant Commissioner's Motion for Summary Judgment (ECF No. 11) and accompanying Memorandum in Support ("Def.'s Mem.," ECF No. 12) were filed on January 23, 2012. On February 6, 2011, Plaintiff filed his Reply to Defendant's Motion for Summary Judgment. ECF No. 13. As neither counsel in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for a decision based on the memoranda.

---

[1] Page citations are to the administrative record previously filed by the Commissioner.

## II. <u>FACTUAL BACKGROUND</u>

### A.  Medical Evidence in the Record

Plaintiff was a thirty-nine year old man at the time of the hearing on this matter. R. 31. He is presently forty-two years old. R.41. Plaintiff is a high school graduate (R. 31), and his past relevant work experience[2] includes working in a grocery store, as a stocker and co-manager (R. 48-49), and as a water technician for the Town of Chincoteague. R. 32. Plaintiff has not engaged in any substantial gainful activity since his alleged onset of disability on February 7, 2008. R. 34.

On February 7, 2008, after experiencing coughing and severe shortness of breath for several days, Plaintiff was admitted to Peninsula Medical Center and placed under the care of Anthony Frey, M.D. ("Frey") at the referral of his primary physician, Glenn Wolfe, M.D. R. 33. Plaintiff remained hospitalized until February 15, 2008. <u>Id.</u>  Frey first ordered an echocardiogram, which revealed a severe left ventricular dysfunction, dilated left ventricle and mild to moderate mitral regurgitation. R. 197, 199. An x-ray taken of Plaintiff's chest showed mild congestion. R. 197. Frey noted a "strong family history" of heart disease, and signs of congestive heart failure and cardiomyopathy. R. 200. Frey ordered a Cardiolite treadmill test for Plaintiff, but Plaintiff was unable to walk for more than a few minutes before having to stop due to fatigue and shortness of breath. R. 197. The Cardiolite signaled large fixed defects anteriorly and inferiorily with a dilated left ventricle and ejection traction of 198. R. 197. Due to these findings, Plaintiff underwent a cardiac catheterization, which showed no significant coronary artery disease. <u>Id.</u> A cardiac defibrillator was implanted in Plaintiff, and he was placed on diuretics, ACE inhibitors, beta blockers, spironolactone, and digoxin. <u>Id.</u> He was discharged on February 15, 2008 in stable condition. <u>Id.</u>

---

[2] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. § 416.960(b)(1)(2012).

On February 26, 2008, Plaintiff visited Frey for a follow-up visit. R. 247. Frey noted that Plaintiff was stable and was doing well, with clear lungs and regular heart sounds, and had been referred to the cardiomyopathy clinic at the University of Maryland. Id. On February 27, 2008, Plaintiff went to this clinic and was seen by Erika Feller, M.D. ("Feller"). R. 275. She noted that Plaintiff reported having "improved energy and exercise tolerance" since leaving the hospital earlier in February, but could only walk about one block before feeling fatigued. Id. Feller performed an echocardiogram on Plaintiff, which revealed an ejection fraction of 20%, dilated left ventricle, near normal right ventricle, and a filling pattern suggestive of diastolic dysfunction. Id. Feller diagnosed dilated non-ischemic cardiomyopathy of unclear etiology, New York Heart Association Class III stage C, indicating that a heart transplant may need to be considered in case Plaintiff does not recover. Id. She noted that there appeared to be no obstructive coronary disease. R. 276. Feller's treatment plan included encouraging Plaintiff to lose weight, abstain from alcohol, start a walking program, and begin a "heart failure education program, including instructions for low sodium [and] fluid restriction diet." Id.

On April 25, 2008, Plaintiff visited Feller for a follow-up appointment. R. 273. Plaintiff reported he had improved energy and exercise tolerance, could walk several blocks before fatiguing, and had not been experiencing chest pain, palpitations, dizziness, syncope, or orthopnea. Id. Feller increased Plaintiff's Coreg medication to 12.5 mg twice daily, and indicated that his heart transplant evaluation was ongoing in the event of a clinical decline, though noted that his clinical signs and symptoms did seem to be improving. R. 274. On April 28, 2008, in a letter addressed to Wolfe, Feller indicated that Plaintiff had diabetes, hypothyroidism, and hyperlipidemia. R. 272.

On June 4, 2008, Plaintiff again visited Frey, who noted Plaintiff's visits with Feller at

the University of Maryland, his scheduled sleep study, and upcoming appointment with a pulmonologist. R. 295. Frey noted that Plaintiff felt fine and offered no complaints, had clear lungs, regular heart sounds, and no edema. Id. Frey increased Plaintiff's Coreg dosage to 25 mg. Id.

Following this June 4, 2008 appointment, Frey filled out an undated Cardiac Impairment Questionnaire, diagnosing Plaintiff with New York Heart non-ischemic cardiomyopathy, sleep apnea, non-insulin dependent diabetes mellitus, hyperlipidemia, and status-post implantable cardiac defibrillator. R. 281. Clinical findings included edema, shortness of breath, and fatigue, and Frey noted that Plaintiff's symptomatology was precipated by walking. R. 282. Plaintiff's medications included Coreg, Cozaar, Digoxin, Lasix, Spironolactone, and Lipitor. R. 283.  Frey indicated Plaintiff was unable to sit for more than an hour or stand/walk for more than an hour per eight hour workday. Id.  Frey opined that Plaintiff was unable to handle even low stress due to his limited activities, and that Plaintiff's ability to work at a regular job on a sustained basis was limited by a requirement to avoid wetness, fumes, gases, temperature extreme, humidity, dust and heights, along with the necessity to avoid pushing, pulling, kneeling, bending, and stooping. R. 285. Frey further indicated a "fair to poor" prognosis, noting Plaintiff's ongoing heart transplant evaluation. R. 281.

On June 6, 2008, Plaintiff was evaluated at Peninsula Pulmonary Associates, P.A., by Kim Hoffman-Goodson, CRNP-F, MS ("Hoffman-Goodson") for obstructive sleep apnea. R. 320. Hoffman-Goodson indicated that Plaintiff was alert, oriented, and well-developed. Id. She noted a regular cardiac rate and rhythm, no edema, and clear lungs. R. 321. Hoffman-Goodson recommended a baseline sleep study and discussed with Plaintiff the possibility of a CPAP titration. Id. On June 20, 2008, the sleep study was performed. R. 318. The study revealed mild

overall obstructive sleep apnea that became severe while in the supine position. R. 319. A CPAP was performed that "effectively controlled" the apnea. Id.  A home CPAP was recommended, and Hoffman-Goodson directed Plaintiff to wear the mask all night every night to obtain maximum benefits. R. 482. Plaintiff was also encouraged to lose weight and avoid alcohol and sedatives to further improve the apnea. Id.

In a letter to counsel for Plaintiff, dated July 2, 2008, Frey indicated that Plaintiff was treated for nonischemic cardiomyopathy with ejection fraction of 20% and a dilated left ventricle. R. 293. Frey noted that his symptoms are improved with medications, but that he is continuing to be evaluated for a possible future cardiac transplant. Id. Due to his diagnosis, Frey opined that Plaintiff could not "do any type of work for at least a year, if not permanently pending how he does over the next year clinically from a cardiac standpoint." Id.

On July 17, 2008, Feller saw Plaintiff for continued management of Plaintiff's heart failure and evaluation for heart transplantation. R. 438. Feller found no changes in Plaintiff's diagnoses or limitations, and Plaintiff reported little change in his energy and exercise tolerance. R. 438-39. Feller increased his Cozaar to 50 mg daily, and again encouraged him to lose weight. R. 439.

On August 27, 2008, Plaintiff visited Hoffman-Goodson for a follow-up appointment related to the initiation of his CPAP. R. 481. Plaintiff indicated that he was unable to sleep with his CPAP mask, but Hoffman-Goodson emphasized the importance of continued use of the CPAP to aid the sleep apnea. Id. She prescribed Lunesta to aid him in sleeping with the mask. Id.

On September 4, 2008, Plaintiff returned to Feller for a follow-up. R. 471. Feller indicated that Plaintiff felt "somewhat better" and reported improved energy. Id. However, at Plaintiff's December 4, 2008 appointment with Feller, Plaintiff complained of fatigue and

dyspnea. R. 507. Though Feller noted Plaintiff's weight gain, she found no other changes in his diagnoses or the status of his heart condition. Id.

On October 27, 2008, Robert Castle, M.D., ("Castle") a state agency physician, reviewed the medical evidence of record and completed a Physical Residual Functional Capacity Assessment ("RFC"). R. 487-93. He diagnosed Plaintiff with non-ischemic cardiomyopathy, congestive heart failure, and sleep apnea. R. 487. Castle indicated that he considered both Feller and Frey's opinions, including those contained in their respective Cardiac Impairment Questionnaires. R. 493. Castle stated that he found conflicting evidence on the record regarding Frey's opinion in the Questionnaire, dated June 4, 2008, that Plaintiff could not do any type of work for "at least one year, if not permanently" pending the outcome of his cardiac progress and treatment. Id. That is, Castle found that Plaintiff had improved, as evidenced in the medical records maintained since Frey submitted the Questionnaire. R. 493.

Moreover, he disagreed with the treating physicians' conclusions regarding Plaintiff's restrictions and limitations. R. 491. First, finding that Plaintiff's own reports regarding his level of functioning to be partially credible, Castle noted that Plaintiff could never climb, but could occasionally balance, stoop, kneel, and crawl. R. 489. Castle further found that, though he needed to avoid exposure to fumes, odors, poor ventilation, and hazards, Plaintiff could withstand unlimited exposure to extreme cold, extreme heat, wetness, humidity, noise, and vibration and had no manipulative, communicative, or visual limitations. R. 489-90. Finally, Castle opined that Plaintiff could frequently lift and carry ten pounds, occasionally lift twenty pounds, stand and walk for at least two hours in an eight-hour work day, sit for about six hours in an eight-hour work day, and push and pull without limitation. R. 488.

On December 11, 2008, Plaintiff returned to Frey.  R. 495. Frey noted that Plaintiff was

well-compensated, asymptomatic, and "ha[d] been doing well." Id. An echocardiogram performed revealed no acute ischemic changes. Id. Frey indicated that Plaintiff was inconsistently using the CPAP and was continuing to work on his weight. Id. On December 30, 2008, Frey checked Plaintiff's defibrillator, which was functioning properly. R. 494. Plaintiff again saw Feller on March 5, 2009. R. 506. Plaintiff indicated that, despite continued dyspnea, he felt "good," had been walking regularly, and wanted to join a gym. Id.

Subsequently, on April 21, 2009, Feller completed a Cardiac Impairment Questionnaire at Plaintiff's counsel's request. R. 530-34. Feller indicated Plaintiff had dilated cardiomyopathy, New York Heart Association Class II Stage C, obesity, diabetes mellitus, and obstructive sleep apnea. R. 530. She also noted that Plaintiff had an implantable cardiac defibrillator. Id. Feller indicated that Plaintiff's primary symptoms were progressive shortness of breath, dyspnea on exertion, weight gain, and coughing. R. 531. Feller cited an EKG that revealed poor R-wave progression, a coronary angiogram that showed small vessels with distal tapering, and an echocardiogram that indicated a 30% ejection fraction with a mildly dilated left ventricle with severely depressed systolic fraction. Id. She noted Plaintiff did not have obstructive coronary disease. Id. Feller opined that Plaintiff could only sit for three hours and stand/walk for one hour over the course of an eight-hour work day. R. 532. She further estimated that Plaintiff's impairments would likely cause him to be absent two to three times a month. R. 533. She asserted that Plaintiff was only capable of low work stress, as Plaintiff's symptoms were exacerbated by stressful situations, and that the ability for Plaintiff to work at a regular job on a sustained basis was limited by his need to avoid fumes, gases, temperature extremes, humidity, dust, heights, and the pushing or pulling of materials or objects. R. 533-34.

**B. Plaintiff's Statement and Hearing Testimony**

At his administrative hearing held June 16, 2009, Plaintiff testified that he last worked in February 2008, after his primary care physician referred him to Frey following a period of shortness of breath and coughing at night. R. 34.

Plaintiff alleged that he can only walk one to two blocks before becoming short of breath (R. 38) and that bending over immediately causes him to become winded. R. 35. He further asserted that his fatigue limits him from being "able to do anything else like [he] used to." R. 36. Consequently, Plaintiff "sleeps a lot," including a couple hours during the day. Id.

Plaintiff stated that he refrained from lifting anything, though he stated that Frey never gave him an actual weight lifting restriction. R. 38. In terms of his daily activities, Plaintiff testified that tries to do laundry and dusted the house a little bit, but that his girlfriend helped with most activities. R. 39. He further alleged that his friends helped him with yard maintenance and that "on good days," he tried to use a riding grass cutter so he could "get out of the house . . . and be outside." Id. The majority of his day is spent reading and watching television. R. 40. When asked if he was feeling better since his initial diagnosis in 2008, Plaintiff answered that he "felt good now, but . . . not as good as before all this happened." R. 47. He indicated that he has "good days and bad days," which occur two or three days a week and though he "never would have believed . . . this disease or health problem . . . would take that much out of a person, it really does." R. 40.

Agina Leddington ("Leddington"), a vocational expert, was asked to consider a hypothetical individual of Plaintiff's age, education, and work experience, who was limited to low stress, low concentration, and low memory work and could lift ten pounds occasionally and lesser amounts frequently. R. 49-50. This hypothetical individual, like Plaintiff, could sit for one

hour and stand for ten minutes consistently or on an alternative basis in an eight-hour work day, perform no climbing, balancing, or stooping, and would be required to avoid odorous fumes, gas, and hazardous chemicals. R. 50-51. Leddington testified that such an individual would be able to perform jobs at the sedentary work activity level, including work as a taper or printer of circuit boards, order clerk for the food and beverage industry, and as an addresser. R 51.  Leddington stated no work exists in the national economy on a "full-time, sustained basis" for an individual who would need to lie down for several hours a day, as Plaintiff testified was required during his daily activities. R. 53.

### III. <u>STANDARD OF REVIEW</u>

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g) (2011); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005) (citing <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996)); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. of N.Y. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It consists of "more than a mere scintilla" of evidence, but may be somewhat less than preponderance. <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966).

When reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  <u>Craig</u>, 76 F.3d at 589; <u>Hays</u>, 907 F.2d at 1456. "Where conflicting evidence

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law.  Perales, 402 U.S. at 390; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (citing Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980)).

Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law.  Coffman, 829 F.2d at 517.


## IV. ANALYSIS

To qualify for a period of disability and DIB under section 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for DIB and a period of disability, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the inability to do any substantial gainful activity, by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  20 C.F.R. § 404.1505(a) (2011); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A) (2011). To meet this definition, the claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.

In evaluating disability claims, the regulations promulgated by the Social Security

Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment that prevents her from past relevant work, and (5) has an impairment that prevents her from any substantial gainful employment. An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability. This analysis is set forth in 20 C.F.R. § 404.1520.

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008).  At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

**A. ALJ's Decision**

In this case, the ALJ found the following regarding Plaintiff's condition.  First, Plaintiff has not engaged in substantial gainful activity since February 7, 2008, the alleged onset date of disability. R. 21. Second, Plaintiff suffers from three severe impairments: cardiomyopathy, diabetes, and sleep apnea. Id. Third, Plaintiff does not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 22. Fourth, Plaintiff is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 26.

Fifth, Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), with some physical limitations and exceptions. R. 22.

In his Memorandum in Support, Plaintiff alleged the following specific errors: (1) the ALJ failed to properly determine Plaintiff's RFC and (2) the ALJ failed to properly evaluate Plaintiff's credibility. Pl.'s Mem. 9-14. For the reasons set forth below, the Court agrees that the ALJ failed to adequately weigh all of the evidence in the case record in making the RFC determination, explain the weight afforded to the treating physicians, or adequately justify his RFC determination in the face of the limitations found by Plaintiff's treating physicians. Additionally, the Court finds that the ALJ failed to adequately explain his finding that Plaintiff's description of his limiting condition was not credible. Moreover, the Court agrees that the ALJ utilized the wrong standard for assessing Plaintiff's credibility, as he evaluated Plaintiff's statements only against his RFC finding and not the evidence on the record. Accordingly, the undersigned recommends that the Commissioner's decision be vacated and the case remanded for further proceedings.

## B. The ALJ's RFC Determination

Upon review, the Court finds that the ALJ made an error of law by not properly addressing all of the medical evidence on record, indicating the weight he afforded to the opinions of Plaintiff's physicians, or adequately explaining his RFC determination in the face of the evidence of record and opinions he allegedly took into consideration. For these reasons, the Court feels that the ALJ's decision was indeed reached by means of an improper standard and misapplication of law and should be remanded. Perales, 402 U.S. at 390; Coffman, 829 F.2d at 517.

After step three of the ALJ's five part analysis, but prior to deciding whether a claimant

can perform past relevant work at step four, the ALJ must determine a claimant's RFC. 20 C.F.R. §§ 404.1545(a)(5). The RFC is a claimant's maximum ability to work despite his limitations. Id. at 404.1545(a)(1). The ALJ then uses that RFC to determine whether the claimant can perform his past relevant work. Id. at § 404.1545(a) (5). The determination of RFC is based on a consideration of all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1545(a)(3).[3]

In the present case, the ALJ found that Plaintiff has the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a). R. 22. However, the ALJ noted that Plaintiff is limited to a "simple, unskilled job with a low stress environment," cannot lift more than ten pounds frequently, must avoid heights, hazardous machinery, temperature extremes, ladders, ropes, scaffolds, odors, and gases, and could not be subject to prolonged climbing, balancing, or stopping. Id. The ALJ further noted that Plaintiff required a sit/stand option. Id. In determining Plaintiff's RFC, the ALJ noted that he "accept[ed]" the opinions given by Plaintiff's treating cardiologist, Feller, finding her opinions well-supported by the clinical and objective evidence and uncontradicted by other substantial evidence. R 25. The ALJ further stated he gave "great weight" to the opinions provided by Frey, Plaintiff's other treating cardiologist, though he concluded that Feller's assessment of Plaintiff's limitations was more consistent with the record, including the testimony given by Plaintiff. Id. Though the Physical RFC Assessment completed by Castle, the state agency physician, was discussed, no weight was accorded to this opinion, and no other medical evidence of record was credited in the ALJ's decision.

Plaintiff's primary assertion is that the RFC determination is inconsistent with the

---

[3] "Other evidence" includes statements or reports from the claimant, the claimant's treating, or nontreating source, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how impairments or symptom affect the claimant's ability to work. 20 C.F.R. § 404.1529(a).

medical opinions on record. Pl.'s Mem. 10-11. In fact, the opinions of both Frey and Feller, which the ALJ "accept[ed]" and assigned "great weight," indicate physical limitations that preclude Plaintiff from even sedentary work. Plaintiff also asserts that Castle's opinion was "mentioned . . . but [not given] any weight." Pl.'s Reply 2, ECF No. 13. Commissioner contends that there was substantial evidence on the record for the ALJ to determine Plaintiff's RFC, and that the ALJ "carefully consider[ed] and specifically discuss[ed] the evidence" on the record and adequately explained the weight given to the treating physicians' opinions in coming to the conclusion that Plaintiff could perform sedentary work. Def.'s Mem. 14-15.

In making the RFC determination, the ALJ must consider the objective medical evidence in the record, including the medical opinions of the treating physicians. Under the federal regulations and Fourth Circuit case-law, a treating physician's opinion merits "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2). Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. However,

> a finding that a treating physician's opinion is not well-supported by medically acceptable clinical and diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.

SSR 96-2, 1996 WL 374188, at *4 (S.S.A.).

The regulations require the ALJ to evaluate every medical opinion. Accordingly, even if a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors" provided by the regulations. Id. at * 5. Those

factors are: (1) "[l]ength of treatment relationship;" (2) "[n]ature and extent of treatment relationship;" (3) degree of "supporting explanations for their opinions;" (4) consistency with the record; and (5) the specialization of the physician. 20 C.F.R. § 404.1527(d)(2)-(6).

The ALJ must articulate "good reasons" for his decision accorded to the opinion of a treating physician. 20 C.F.R § 416.927(d)(2). In fact, under the applicable regulations, the ALJ is required to explain in his decision the right accorded to *all* opinions, including treating sources, non-treating sources, State agency consultants, and other nonexamining sources. 20 C.F.R. § 416.927(f)(2)(ii). Therefore, when the ALJ's decision is not fully favorable to the claimant, the decision must contain

> specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2, 1996 WL 374188, at *5 (S.S.A.). This specificity requirement is necessary because the reviewing court

> face[s] a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence. Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the records as a whole to determine whether the conclusions reached are rational."

Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977) (quoting Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974)).

**1. Frey, Plaintiff's Cardiologist**

Plaintiff was admitted to the hospital, under Frey's care, on February 7, 2008 and remained there until February 15, 2008 (R. 197-99). He subsequently had appointments with

16

Frey on February 26, 2008 (R. 247), June 4, 2008 (R. 295), and December 30, 2008 (R. 494). Despite the frequency with which Plaintiff met with Frey, the ALJ barely referenced these meeting notes in making his RFC findings.

In fact, of these appointment records, the ALJ included only Plaintiff's initial test results upon admission to the hospital on February 7, 2008 in making his RFC determination. He did not address the results of either the Cardiolite treadmill test or the cardiac catheterization Plaintiff underwent during his week at the hospital. The ALJ did cite and evaluate portions of Frey's June 4, 2008 Cardiac Impairment Questionnaire, which indicated, among other limitations, that Plaintiff was unable to sit for more than an hour or stand/walk for more than an hour per eight hour workday. R. 24.[4] Under the Regulations, such a limitation precludes a claimant from performing even sedentary work, as a sedentary work finding requires that a claimant can sit for approximately six hours per work day and stand/walk for the remainder of the work day. SSR 83-10, 1983 WL 31251, at *5 (S.S.A.).

The ALJ erred by rejecting fully Frey's opinion that Plaintiff could not perform even sedentary work without adequately explaining what substantial evidence supports his decision to reject the treating physicians' analysis. That is, if a treating physician's opinion is not entitled to controlling weight, the ALJ must weigh the factors outlined in 20 C.F.R. § 404.1527(d)(1)-(6). The ALJ indicated that he gave "great weight" to Frey as a treating source, but then stated that Frey's opinion was "inconsistent with the other substantial evidence of record," leading him to disagree with Frey's findings of disability. R. 25. However, the ALJ does not go further than stating that the record was fully considered and supports his decision. The ALJ made an error of law by citing only the portions which support his ultimate decision and not addressing all of the

---

[4] He noticeably failed, however, to address another indication made by Frey in this Questionnaire that Plaintiff had a "fair to poor prognosis" (R. 281), except when stating that Castle, the State agency physician, disagreed with this prognosis. R. 25.

evidence on record . See Switzer v. Heckler, 742 F.2d 382, 385 (7th Cir. 1984) (explaining that the "attempt to use only the portions favorable to [the ALJ's] position while ignoring other parts, is improper").

The Court cannot find that the ALJ's decision is supported by substantial evidence when the ALJ has not analyzed and appropriately weighed all the relevant evidence before him. See Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977) ("Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the records as a whole to determine whether the conclusions reached are rational.'") (internal citations omitted). It is the exclusive province of the Commissioner to assign weight to evidence and reconcile conflicts in the record. Hays, 907 F.2d at 1456. A blanket assertion that he has fulfilled this obligation does not satisfy the requirement, preventing the Court from conducting a meaningful judicial review. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Though not required to wholly adopt a treating physician's opinion in cases where there is inconsistent substantial evidence to the contrary, SSR 96-2P, 1996 WL 374188, at * 4 (S.S.A.), the ALJ is required to explain what substantial evidence he relied upon in coming to an opposite conclusion. See Arnold, 567 F.2d at 259. By failing to adequately explain the evidence supporting his findings, which directly contradicts the treating physicians' opinion, the ALJ made an error of law.

### 2. Feller, Cardiologist

Feller began treating Plaintiff on February 27, 2008 at the University of Maryland for his cardiomyopathy, at the referral of Frey. R. 275. She examined him consistently, with follow-up

appointments occurring on April 25, 2008 (R. 273), July 17, 2008 (R. 438), September 4, 2008 (R. 471), December 4, 2008 (R. 507), and March 5, 2009 (R. 506). Despite the regularity of appointments with Plaintiff, the ALJ referred only to Frey, and not Feller, as a treating physician. See R. 23 ("The claimant's treating physician is Anthony J. Frey, M.D., F.A.C.C."). A treating source is defined as:

> your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 404.1502. Plaintiff and Feller had an "ongoing treatment relationship," regularly meeting over the course of a year. Id. Moreover, Plaintiff met with Feller due to his cardiomyopathy and potential need for a heart transplant, not solely to "obtain a report in support" of his claim. Id. Accordingly, Feller meets the requirements to qualify as a treating source. Id. As a result, the ALJ should have addressed the weight given to her opinion, and accompanying reasons for such weight, as required by the Regulations. 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(2). The ALJ erred by not doing so.

Besides making no indication as to Feller's role in Plaintiff's treatment or the weight he afforded her opinion, he relied only upon the findings and diagnoses contained in a

Questionnaire completed by Feller on April 21, 2009. R. 25.[5] That is, the ALJ did not discuss the notes from Plaintiff's April 25, 2008 (R. 273), December 4, 2008 (R. 507), July 17, 2008 (R. 438)[6], or March 5, 2009 (R. 506) appointments with Feller in making the RFC determination. With respect to Plaintiff's appointment with Feller on February 28, 2008, the ALJ mentions only a portion of her notes, and does so merely in the context of describing Castle's Physical RFC report. See R. 24 ("In reviewing the medical evidence, Dr. Castle reported that the claimant was seen on February 28, 2008 at the Cardiac Ambulatory Clinic at the University of Maryland with complaints of dizziness. [Castle] referred to an examination performed by a cardiologist for nonischemic dilated cardiomyopathy.").

The ALJ concluded that he agreed with Feller, the cardiologist, with respect to the nature and severity of the claimant's condition," again based only on the information contained in Feller's Questionnaire. R. 25. In this Questionnaire, Feller opined that Plaintiff could only sit for three hours and stand/walk for one hour over the course of an eight-hour work day. R. 532. She further estimated that Plaintiff's impairments would likely cause him to be absent two to three times a month. R. 533. She asserted that Plaintiff was only capable of low work stress, as Plaintiff's symptoms were exacerbated by stressful situations, and that the ability for Plaintiff to work at a regular job on a sustained basis was limited by his need to avoid fumes, gases, temperature extremes, humidity, dust, heights, and the pushing or pulling of materials or objects. R. 533-34. Had he truly "agreed with" the limitations contained in this Questionnaire, the ALJ would have found Plaintiff disabled, as Feller's conclusion that Plaintiff could only sit for three hours and stand/walk for one hour in a work day precludes even sedentary work. SSR 83-10,

_____

[5] The ALJ improperly stated that the Cardiac Impairment Questionnaire was completed by Feller on March 5, 2009. In fact, Feller completed the Questionnaire on April 5, 2009. R. 530-34.

[6] The ALJ improperly cites Feller as the source for the July 2, 2008 treatment notes. R. 25. Frey, in fact, was the physician whom Plaintiff with on met that day. R. 437.

1983 WL 31251, at *5 (S.S.A.).

As stated above, the ALJ erred (1) by not specifying the amount of weight given to Feller, (2) by stating he agreed with the Questionnaire completed by Feller, which indicated Plaintiff was disabled, and then coming to the opposite conclusion, and (3) not referring to heras a treating physician and addressing the factors outlines in 20 C.F.R. § 404.1527(d)(1)-(6). Despite the overt omission of exactly what weight was assigned to Feller's opinion, he appears to give great weight to her Questionnaire, while ignoring other appointment notes maintained by Feller. Despite his alleged reliance, the ALJ's ultimate conclusion that Plaintiff could perform even sedentary work is entirely inconsistent with Feller's opinion. Accordingly, the Court feels that remand is necessary due to the ALJ's errors of law.

### 3. Castle, State Agency Physician

The ALJ further erred with respect to his treatment of Castle's opinion. Castle's October 27, 2008 Physical RFC assessment was based only on the medical records submitted to him and not on any actual examination of Plaintiff. Based on the review of these records, Castle concluded that Plaintiff could sit for more than six hours per work day. R. 24. After re-stating Castle's opinion, the ALJ found that "in sum, the above residual functional capacity assessment is supported by the record as a whole." Id. This adoption of Castle's opinion is problematic. The ALJ assigns absolutely no weight to the opinion but seems to espouse as his own Castle's position that Plaintiff can sit for six hours and stand/walk for two hours per work day.[7] Castle is not a treating physician, having made an assessment of Plaintiff's condition only upon review of the medical records. Though non-treating physicians' opinions are generally afforded less weight than those of treating physicians, 20 C.F.R. § 404.1527(d)(1),(2), the ALJ is still required to

---

[7] This conclusion may in fact be incorrect, but the Court can only surmise that the ALJ incorporated the opinion of Castle fully as his own, as Castle was the only doctor who felt Plaintiff could meet the bare minimum threshold (six hours of sitting per workday) to perform sedentary work under the Regulations.

assign specific weight to such opinions and articulate their reasons for the weight assigned. See 20 C.F.R. § 416.927(f)(2)(ii); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).   By failing to do so, and by seemingly affording Castle more weight than that of Frey or Feller, the ALJ made an error of law.

### 4. Evidence Not Cited by the ALJ

The Commissioner maintains that this decision was made based upon a "careful review of the entire record," citing pertinent parts of the record supporting this argument. Def.'s Mem. 13. Despite this position, the ALJ's denial decision failed to include the "ample evidence in the record" supporting his RFC finding. Id. In his Memorandum, the Commissioner cites to Frey's June 4, 2008 appointment with Plaintiff, wherein Plaintiff stated he was able to walk several blocks before becoming tired or out of breath, and was observed to have clear lungs, regular heart sounds, and no edema. R. 294-95, Def.'s Mem. 13. The Commissioner then cites Frey's November 4, 2009 appointment record, which notes that Plaintiff could walk several blocks before becoming winded. R. 552, Def.'s Mem. 13. Treatment notes of Feller, dated July 17, 2008, were also included in the Commissioner's Memorandum. Def.'s Mem. 13.   However, these medical records are wholly absent from the ALJ's decision.

While the Commissioner makes a good argument that substantial evidence indeed existed for the ALJ to make his RFC finding, the Court cannot agree that "as evidenced by the ALJ's decision, the objective medical evidence and [P]laintiff's activities fully supported the finding that [P]laintiff could perform a range of sedentary work." Def.'s Mem. 14. The Court is required to "affirm [an] ALJ's decision *only upon the reasons he gave*." SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). On review, this Court is not permitted to infer reasons to support the ALJ's decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) (stating that a reviewing

court must evaluate an ALJ's decision "based *solely on the reasons stated in the decision*" (emphasis added)). It is not the Court's job to engage in a hindsight analysis or sift through evidence that is present in the full record but not in the ALJ's decision, as the Commissioner's motion suggests we do.  From the text of the ALJ's opinion, the Court is unable to conclude that the ALJ properly considered all of the medical evidence related to Plaintiff's visits with his treating physicians. An ALJ "cannot 'pick and choose' only the evidence that supports his position." Loza v. Apfel, 219 F.3d 378, 393 (5th Cir. 2000); see also Switzer, 742 F.2d at 385 (explaining that the "attempt to use only the portions favorable to [the ALJ's] position while ignoring other parts, is improper").

Failing to develop a full record precludes the Court from engaging in a meaningful review of the ALJ's decision because it cannot speculate as to how the ALJ's decision might have been different had he correctly assessed the evidence before him. See Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011) (remanding case where no fact finder had made any findings concerning the weight of a treating physician's opinion); Hays, 907 F.2d at 1456 ("[I]t is not within the province of a reviewing court to determine the weight of the evidence . . . ."). An ALJ's opinion must explain both the weight assigned to treating and non-treating physicians' opinions and consider all of the evidence on record in making his decision. As he did not, the Court finds that the ALJ made an error of law. Accordingly, the appropriate remedy is to vacate the denial of Plaintiff's claim and remand for further proceedings.

**C. Credibility Assigned to Statements of Plaintiff**

The RFC determination, as outlined supra, must incorporate not only impairments supported by objective medical evidence, but also those impairments based on credible complaints made by the claimant. The ALJ uses a two-step analysis in evaluating a claimant's

subjective complaints. <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996). First, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably produce the claimant's pain or symptoms. <u>Id.</u> If the underlying impairment could reasonably be expected to produce the claimant's pain, the ALJ must then evaluate the claimant's statements about the intensity and persistence of the pain, as well as the extent to which it affects the individual's ability to work. <u>Id.</u> at 595. The ALJ's evaluation must take into account all available evidence, including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the claimant's subjective statements. <u>Id.</u> at 595-96.

This Court is required to give great deference to the ALJ's credibility determinations. <u>See e.g.</u>, <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488-91 (1951). The Fourth Circuit has held that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" <u>Edelco, Inc. v. NLRB</u>, 132 F.3d 1007, 1011 (4th Cir. 1997) (internal citations omitted). Therefore, this Court's analysis is restricted to determining if the ALJ's credibility determination is supported by substantial evidence and employed the correct legal standard. <u>Craig</u>, 76 F.3d at 589.

Additionally, Plaintiff's subjective statements about his pain and symptoms are not, alone, conclusive evidence that he is disabled. 20 C.F.R. § 404.1529(a). Rather, "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant. <u>Craig</u>, 76 F.3d at 591-92. Finally, Social Security Ruling 96-7p states that the evaluation of a plaintiff's subjective complaints must be based on the consideration of *all* the evidence in the record, including, but not limited to: (1) medical and

laboratory findings, (2) diagnoses and medical opinions provided by treating or examining physicians and other medical sources; (3) statements from both the individual and treating or examining physicians about the claimant's medical history, treatment, response, prior work record, and the alleged symptoms' effect on the ability to work.

In this case, Plaintiff claims that the ALJ erred in finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible, as the determination was made applying an incorrect standard and was "entirely unexplained despite the consistency between [Plaintiff's] testimony and the medical evidence." Pl.'s Mot. Summ. J. 11. Additionally, Plaintiff argues that the ALJ employed an incorrect standard when assessing his credibility, evaluating Plaintiff's statements against the RFC, as opposed to the evidence of record. Id. at 13. The Commissioner defends the decision by citing medical evidence on the record, much of which, again, is not included in the ALJ's denial decision.

In issuing his decision, the ALJ first acknowledged that Plaintiff's impairments could reasonably be expected to cause his alleged symptoms. R. 23. The ALJ noted that Plaintiff testified at his hearing that he is unable to work due to his cardiomyopathy. Id. He further acknowledged Plaintiff's statements regarding his problems with fatigue, shortness of breath and coughing, and his need to sleep a lot. Id. The ALJ continued by noting Plaintiff's testimony that he can do housework, dress and bathe himself, prepare light meals and go grocery shopping. Id. Nevertheless, the ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are *inconsistent with the above residual functional capacity assessment*." Id. (emphasis added).

The Regulations instruct the ALJ to evaluate the consistency of a plaintiff's statements against the evidence of record, and not against the ALJ's own RFC assessment. 20 C.F.R. §

404.1529(c)(4); see also Maske v. Astrue, 2012 WL 1988442, at \*2-3, 14 (N.D. Ill. May 31, 2012) (finding remand to be appropriate where an ALJ discounted a plaintiff's credibility because her testimony did not mesh with the RFC determination, as the "ALJ's credibility analysis fail[ed] to build the required logical bridge between the evidence and the conclusion that her testimony was not credible"); Spratt v. Astrue, 2012 WL 1110018, at \*23-24 (N.D. Iowa April 2, 2012) ( "[T]he 2010 decision [of the ALJ] is devoid of any reasons for his credibility determination. . . . The ALJ simply concluded that [Plaintiff's] testimony was 'inconsistent with the above residual functional capacity assessment. . . .' [T]he ALJ has failed in his duty to make an express credibility determination, detailing the reasons for discrediting the testimony, and setting forth inconsistencies in the record . . . ."); Kelly v. Astrue, 2011 WL 4443023, at \*9 (N.D. Iowa Sept. 2, 2011) ("In determining the credibility of Kelly's testimony and subjective allegations of disability, the ALJ . . . . Specifically, the Court finds that the ALJ's decision lacks the required detail for discrediting a claimant . . . The ALJ . . . . simply states that Kelly's 'statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment,' provid[ing] no reasons for discounting [claimant's] testimony other than 'his allegations are inconsistent with the ALJ's RFC assessment.'").

The specific grounds for his credibility determinations are not clear, and the Court can only infer from the ALJ's much abbreviated discussion of Plaintiff's testimony that he based his conclusion on Plaintiff's ability to complete some household tasks despite his claims of shortness of breath and fatigue. Although these may be permissible grounds for an adverse credibility finding, the ALJ failed to fully explore the bases or reference the medical evidence on record for his determination, as required by the Social Security Rulings. Indeed, a "bare conclusion that

[Plaintiff's] statements lack credibility because they are inconsistent with 'the above residual functional capacity assessment' does not discharge the duty to explain." <u>Kotofski v. Astrue</u>, 2010 WL 3655541, at *9 (D.Md. Sept. 14, 2010). Further, as outlined above, the Court cannot find the RFC determination in this case was made with full consideration of all the evidence on record. Therefore, it would be illogical for the Court to accept the ALJ's conclusion that Plaintiff's statements are not credible because they are inconsistent with the RFC determination.

The Commissioner's motion effectively outlines evidence, contained in the full administrative record, which potentially contradicts Plaintiff's testimony and may indeed render the complaints not credible. <u>See</u> Def.'s Mem. 16 (discussing portions of Plaintiff's testimony and physicians' treating notes, which are not addressed in the ALJ's decision).  Again, however, the Court may "affirm [an] ALJ's decision *only upon the reasons he gave*." <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947). On review, this Court is not permitted to infer reasons to support the ALJ's decision. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004) (stating that a reviewing court must evaluate an ALJ's decision "based *solely on the reasons stated in the decision*" (emphasis added)).  It is the duty of this Court to remand in situations "where credibility determinations and inference drawing is required of the ALJ ... [A court] should not hesitate to remand [such a] case for further findings or a clearer explanation for the decision." <u>Barry v. Schweiker</u>, 675 F.2d 464, 469 (2d Cir. 1982). Despite the convincing argument made in the Commissioner's motion, the Court cannot conclude that, in issuing his denial decision, the ALJ considered all relevant evidence in finding Plaintiff's statements to not be credible.

## V.  <u>RECOMMENDATION</u>

Based on the foregoing analysis, it is the recommendation of this court that Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF Nos. 8 and 9) be GRANTED to the extent that it seeks remand of the Commissioner's decision and DENIED to the extent that it seeks reversal and an entry of an order directing the award of benefits. The Court further recommends that Defendant's Motion for Summary Judgment (ECF No. 11) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED for further administrative proceedings consistent with this Report and Recommendation.

## VI.  <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. §  636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules.  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr</u>

v. Hutto, 737 F.2d 433 (4th Cir. 1984), cert. denied, 474 U.S. 1019 (1985); United States v.

Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

_____/s/_____
Tommy E. Miller
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
June 29, 2012

**CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Joel C. Cunningham, Jr.
Law Offices of Binder and Binder
120 Edmunds Boulevard
P.O. Box 459
Halifax, VA 24558

Joel E. Wilson
United States Attorney's Office
101 W. Main St., Suite 8000
Norfolk, VA 23510

By _____
Fernando Galindo, Clerk
Deputy Clerk
June 29, 2012